UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN C ROUNDTREE, | CASE NO. C13-239 MJP |
| Plaintiff, | ORDER ON MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| CHASE BANK USA, N.A., | |
| Defendant. | |

This matter comes before the Court on Plaintiff Brian C. Roundtree's ("Mr. Roundtree") Motion for Summary Judgment and Defendant Chase Bank USA, N.A.'s ("Chase") Motion for Partial Summary Judgment. (Dkt. Nos. 38, 35.) The Court considered the motions, the responses (Dkt. Nos. 62, 58), the replies (Dkt. Nos. 80, 74), and all related documents. The Court DENIES Mr. Roundtree's Motion for Summary Judgment and GRANTS in part and DENIES in part Chase's Motion for Partial Summary Judgment. The Court DISMISSES Mr. Roundtree's negligence, fraud, negligent misrepresentation, and breach of fiduciary duty claims. Likewise, the Court GRANTS Chase's motion and DISMISSES the Washington Consumer

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 1

Protection Act ("WCPA") claim. Genuine issues of material fact, however, exist as to Mr. Roundtree's Fair Credit Banking Act ("FCBA") and breach of contract claims.

## Background

This case involves credit card charges on Mr. Roundtree's Chase credit card. He used his Chase credit card for travel and entertainment. (Dkt. No. 36 at 11.) The Parties dispute whether these charges were authorized and if Mr. Roundtree is obligated to pay them.

**A. Mr. Roundtree's Night at the Bagdad in Spain**

Mr. Roundtree was in Barcelona for a business conference in early 2012. (Dkt. No. 36 at 15.) He and a few others went to an Irish pub, where he had at least two drinks. (Dkt. No. 39-1 at 2.) The group then went to dinner, where he had two glasses of wine. (Id. at 3.) The group went to a nightclub for a while but left because they could not get a drink. (Dkt. No. 36 at 18.)

Mr. Roundtree, along with Mr. Roution and Mr. Choy, decided to go to the Bagdad, a strip club, around midnight. (Id.) Mr. Roundtree ordered a gin and tonic, a round of drinks for his business associates, and one bottle of champagne for some women who worked at the club. (Dkt. No. 39-1 at 5.) He used his HSBC credit card to pay for these drinks, which cost approximately 300 Euros. (Id. at 9.) Mr. Roundtree states he authorized the payment by signing an electronic pad. (Id. at 8.)

Mr. Roundtree claims he felt dizzy and tired after taking a sip of his gin and tonic. (Id. at 10.) He passed out within five to ten minutes and woke up with a mouth full of vomit. (Id.) He then passed out again. (Id. at 15.) Briefly regaining consciousness, he recalled seeing the bartender and the credit card machine. (Id. at 16.) He said one of the girls at the club grabbed his hand to place it on the card reader on which he scribbled something and passed out again. (Id. at 17-20.) He also remembers waking up in a dark room while holding the electronic credit card reader and then passing out again. (Id. at 23.) Mr. Roundtree woke early in the morning

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 2

and was handed a receipt that had his passport number on it. (Id. at 32.) He immediately left. (Id.)

Mr. Roundtree's HSBC credit card was charged three times for a total of $3,833.83. He says the HSBC charges were authorized. (Dkt. No. 36 at 32.) Mr. Roundtree's Chase credit card was also charged three times for the following amounts: $25,727.97, $4,743.97, and $12,156.43. (Dkt. No. 32-1 at 2-4.) However, Mr. Roundtree says he never took his Chase card out of his pocket and the signatures on the transaction slips are forged. (Dkt. No. 39-1 at 32-33.)

Mr. Roundtree did not file a formal police report regarding his alleged drugging and unauthorized credit card charges. He did, however, speak to a Spanish police officer and to an English-speaking security guard at the conference he was attending about the night at the Bagdad. (Id. at 36.)

### B. Mr. Roundtree's Initial Response to the Charges

Mr. Roundtree called Chase later that day when he remembered seeing the receipt in front of him with a high dollar amount. (Dkt. No. 36 at 36.) Chase said three charges were pending from the Bagdad for approximately $42,000. (Id.) According to Mr. Roundtree, Chase told him, "It's all taken care of. Don't worry about it." (Id. at 38.) The employee also told Mr. Roundtree to call back. (Id. at 47.) Mr. Roundtree closed his Chase account. (Id.)

Mr. Roundtree claims his Chase credit card has a spending limit of $26,500, thus making him not responsible for at least approximately $15,000 of the allegedly unauthorized charges. (Dkt. No. 1-2 at 2.) The Chase card, however, does not have a spending limit; instead, it has a credit access line. (Dkt. No. 31-1 at 11.) The Cardmember Agreement states the card holder is responsible for balances on the account including those charged in excess of the credit access line. (Id.)

//

**C. Chase's Investigation**

Chase initiated an investigation following Mr. Roundtree's call. (Dkt. No. 61-1 at 11.) Chase noted Mr. Roundtree said he was at a restaurant called the Bagdad and the charge should have only been 220 Euros. (Id.) In a later call, Mr. Roundtree stated he was drugged and the charges were not authorized. (Id. at 10.) He also told Chase his card was taken out of his pocket. (Id. at 8.) As part of its investigation, Chase contacted the Bagdad and Barcelona police. (Id. at 7.) The police said Mr. Roundtree never filed a police report. (Id.) Chase was unable to obtain any information from the Bagdad. (Id.) Chase compared the signatures on the transaction slips from the Bagdad with those on file and concluded the signatures were the same. (Id. at 5.) Chase sent Mr. Roundtree a letter concluding the charges were authorized. (Dkt. No. 32-1 at 9.)

**D. Procedural Posture**

Mr. Roundtree filed this action in state court against Chase in early 2013. (Dkt. No. 1-2.) He sued for breach of contract, negligence, negligent misrepresentation, fraud, breach of fiduciary duty, violation of the WCPA, and violation of the FCBA. (Id.) Chase removed the case to this Court. (Dkt. No. 1.)

Both Parties move for summary judgment. Mr. Roundtree asks the Court to grant summary judgment on all seven claims. (Dkt. No. 38.) Chase moves for summary judgment on the fraud, negligent misrepresentation, negligence, breach of fiduciary duty, and WCPA claims. (Dkt. No. 35 at 2.) Chase also moves for summary judgment on the breach of contract and FCBA claims "insofar as [Mr. Roundtree] alleges that Chase had a duty to somehow mitigate the damage or seek recovery on his behalf from the Barcelona pornography club." (Id.)

//

//

//

## Analysis

### A. Legal Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(a) "if the movant shows that there is no genuine dispute as to any material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the moving party has met its burden of showing no genuine issue of fact exists, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. The non-moving party must come forward with specific facts that show a genuine issue exists for trial. Id. at 587. No genuine issue for trial exists if the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Id.

### B. Mr. Roundtree's Tort Claims Fail As a Matter of Law

First, Chase moves to dismiss Mr. Roundtree's tort claims on the theory Chase owed him no duties to him outside the contract. (Dkt. No. 35 at 16.) The Court agrees.

The independent duty doctrine is "an analytical tool used by the court to maintain the boundary between torts and contract." Elcon Const., Inc. v. Eastern Wash. Univ., 174 Wash.2d 157, 166 (2012). The doctrine bars tort claims related to a contract that do not arise from a tort duty existing independently of the terms of the contract. Id. The independent duty doctrine applies where "considerations of common sense, justice, policy, and precedent in a particular set of circumstances [lead] ... to the legal conclusion that the defendant did not owe a duty." Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 389 (2010).

Washington courts have limited the application of the independent duty doctrine:

> We have applied the doctrine to a narrow class of cases, primarily limiting its application to claims arising out of construction on real property and real property sales. "We have done so in each case based upon policy considerations unique to those industries. We have never applied the doctrine as a rule of general application outside of these limited circumstances"…Indeed, in Eastwood we directed lower courts not to apply the doctrine to tort remedies "unless and until this court has, based upon considerations of common sense, justice, policy and precedent, decided otherwise."

Elcon Const., Inc. v. Eastern Washington University, 174 Wn.2d 157, 165 (2012)( quoting Eastwood, 170 Wn.2d at 416-17 (Chambers, J., concurring)).

This credit card dispute falls outside the class of cases Washington Courts have applied the independent duty doctrine. It involves consumer transactions in business and finance, not real estate or construction claims. Plaintiff cites to no Washington case authority indicating the Washington Supreme Court has decided to apply the doctrine to this class of cases, and this Court declines to do so.

Even if the Court were to apply the doctrine to Mr. Roundtree's tort claims, they would still fail because Chase did not owe him a duty outside the contract. The relationship between Chase and Mr. Roundtree is entirely defined by the Cardmember Agreement. And Mr. Roundtree's claims turn on whether the charges at the Baghdad Club were authorized under that agreement and whether Chase fulfilled its obligations in investigating the charges. The lack of an independent duty is apparent in Mr. Roundtree's presentation of his negligence claim: "Chase did have a duty to prevent fraudulent activity by its common law requirement to exercise due care and reasonably consider the totality of the circumstances of Roundtree's claim." (Dkt. No. 62 at 16.) However, any obligation by Chase's part to prevent "fraudulent activity" arises entirely from the Cardmember Agreement, and not from common law or statute.

Nor is Mr. Roundtree correct that policy considerations weigh in favor of the Court recognizing duties outside the contract. He claims the Cardmember Agreement contains

1  "boilerplate language," which means the parties were not afforded an opportunity to apportion
2  risk. (Dkt. No. 62 at 14.) An ability to apportion risk is not among the policy considerations
3  Washington courts weigh in recognizing an independent duty. Instead, Washington courts
4  evaluate whether the tortfeasor is in a position of trust, like professional engineers who "owe
5  duties to their clients and the public to act with reasonable care, which can sometimes give
6  rise to a tort duty independent of the contract." Donatelli v. D.R. Strong Consulting
7  Engineers, Inc., --- Wn.2d ---, 312 P.3d 620, 624 (2013). Here, there are no similar
8  considerations. Moreover, even if the Court accounted for the policy considerations, Chase still
9  owed him no duty other than under the contract.

10   Without the application of the independent duty doctrine, Mr. Roundtree's remedies for
11  economic loss are limited to contractual damages. See Key Development Investment LLC v.
12  Port of Tacoma, 173 Wn.App. 1, 27 (2013). Therefore, the Court GRANTS summary judgment
13  in favor of Chase on Mr. Roundtree's negligence, fraud, negligent misrepresentation, and
14  fiduciary duty claims.

15   **C. Mr. Roundtree Fails to Show an Unfair or Deceptive Act for his WCPA Claim**
16   The purpose of the WCPA "is to complement the body of federal law governing restraints
17  of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to
18  protect the public and foster fair and honest competition." RCW 19.86.920. However, the act
19  "shall not be construed to prohibit acts or practices which are reasonable in relation to the
20  development and preservation of business or which are not injurious to the public interest." Id.
21   A plaintiff must prove five elements in order to establish a CPA violation: (1) an unfair or
22  deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest,
23  (4) causes injury to the plaintiff in his or her business or property, and (5) the injury is causally
24  linked to the unfair or deceptive act. Michael v. Mosquera-Lacy, 165 Wn.2d 595, 602 (2009).

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 7

1  The plaintiff "must make a prima facie showing of all five elements in order to survive summary
2  judgment[,]" and failure to satisfy one of the elements is fatal to the claim. Brown ex rel.
3  Richards v. Brown, 157 Wn. App. 803, 815 (2010).
4       Courts review whether particular actions taken by the defendant are deceptive as a matter
5  of law. Id. The plaintiff does not have to prove the defendant intended to deceive, but that "the
6  alleged act had the capacity to deceive a substantial portion of the public." Peterson v. Kitsap
7  Cmty. Fed. Credit Union, 171 Wn. App. 404, 426 (2012). Deception also exists "if there is a
8  representation, omission, or practice that is likely to mislead a reasonable consumer." Id.
9       Here, Mr. Roundtree identifies three acts as allegedly deceptive or unfair. First, he
10 claims Chase's investigation was cursory and Chase should "adopt a more thorough claims
11 review process whereby claims are immediately categorized by merchant." (Dkt. No. 62 at 21-
12 22.) Mr. Roundtree concocts this requirement from thin air. He offers no authority to support
13 the notion that failing to review other claims against the same merchant constitutes deception.
14      Second, Mr. Roundtree claims Chase's deletion of telephone calls from card holders is
15 deceptive. (Dkt. No. 38 at 22.) Legally and factually this allegation fails. First, Mr. Roundtree
16 offers no authority for the proposition that a credit card company's failure to retain calls
17 constitutes deception. Second, even in the light most favorable to Mr. Roundtree, Chase's
18 deletion of his calls cannot be considered deceptive. (Dkt. No. 32-1 at 9). Mr. Roundtree
19 implies that by deleting the calls, Chase destroyed evidence for this case. The record belies this
20 claim: Chase deleted the calls months before this case was filed and before it knew legal action
21 might even happen.
22      Finally, Mr. Roundtree contends that asking for a card holder's last four digits of his or
23 her social security number is deceptive. But Chase only asks for verification purposes. Chase's
24

website says, "If we call you, you'll never be asked for personal security information, such as your . . . Social Security Number." (Dkt. No. 38 at 23.) Mr. Roundtree states he was asked to "identify himself over the phone numerous times using his last four" digits of his Social Security number. (Id.) The record only shows perhaps one incident in which Mr. Roundtree was asked for the last four digits of his social security number when Chase called him. (Dkt. No. 40-1 at 36.) Mr. Roundtree states this "inability (or unwillingness) to abide by its own personal information disclosure standards" has the capacity to deceive the public. (Dkt. No. 38 at 23.) Chase argues asking for the last four digits does not contradict what is stated on the website and ensures Chase is speaking with the actual customer. (Dkt. No. 58 at 21.) Mr. Roundtree has failed to show exactly how this deceives or misleads the public. Even if the Court ignored this defect and assumed Chase asking for the last four digits did constitute a deceptive act, Mr. Roundtree has failed to show injury or how he was damaged by such practice.

Because Mr. Roundtree fails to meet the first element for a WCPA claim, the Court GRANTS summary judgment to Chase.

### D. The Court Denies Summary Judgment on the FCBA Claim

To succeed on an FCBA claim, Mr. Roundtree must show "(1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the bank issuing the card to comply with the procedural requirements" of 15 U.S.C. § 1666 (2011). Cunningham v. Bank One, 487 F. Supp. 2d 1189, 1191 (W.D. Wash. 2007). Mr. Roundtree argues Chase failed to comply with the FCBA's procedural requirements.

First, Mr. Roundtree argues Chase never sent a written acknowledgement or its conclusions about his claim within the required 30 days. (Dkt. No. 38 at 13-14.) 12 C.F.R. § 226.13(c) states Chase is required to deliver to the consumer within 30 days of receiving a billing error notice a written acknowledgment unless Chase complied with the resolution procedures

outlined in (e) and (f) of the section within the 30-day period. Mr. Roundtree sent a Confirmation of Unauthorized Use to Chase on April 24, 2012. (Dkt. No. 32-1 at 7.) Chase argues it sent a finality letter stating the charges were authorized on May 4, 2012 (Dkt. No. 58 at 16.), but this letter is not in the record before the Court. Thus, questions of fact remain as to whether a letter of acknowledgment was sent within 30 days.

Second, Mr. Roundtree argues Chase did not conduct a reasonable investigation, also in violation of the FCBA. 12 C.F.R. § 226.13(f) states:

> If, <u>after conducting a reasonable investigation</u>, a creditor determines that no billing error occurred or that a different billing error occurred from that asserted, the creditor shall within the time limits in paragraph (c)(2) of this section:
> (1) Mail or deliver to the consumer an explanation that sets forth the reasons for the creditor's belief that the billing error alleged by the consumer is incorrect in whole or in part.

<u>Id</u>. (emphasis supplied). Comments to this regulation outline what constitutes a reasonable investigation:

> A. Reviewing the types or amounts of purchases made in relation to the consumer's previous purchasing pattern.
> B. Reviewing where the purchases were delivered in relation to the consumer's residence or place of business.
> C. Reviewing where the purchases were made in relation to where the consumer resides or has normally shopped.
> D. Comparing any signature on credit slips for the purchases to the signature of the consumer (or an authorized user in the case of a credit card account) in the creditor's records, including other credit slips.
> E. Requesting documentation to assist in the verification of the claim.
> F. Requiring a written, signed statement from the consumer (or authorized user, in the case of a credit card account). For example, the creditor may include a signature line on a billing rights form that the consumer may send in to provide notice of the claim. However, a creditor may not require the consumer to provide an affidavit or signed statement under penalty of perjury as a part of a reasonable investigation.

12 C.F.R. § 226.12(b)(3), Supp. I, cmt. 3. Generally, deciding whether an investigation was reasonable is not appropriate on summary judgment, but summary judgment is not precluded

when the jury could come to one conclusion about the investigation's reasonableness. <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1157 (9th Cir. 2009).

The record before this Court shows Chase undertook many of the FCBA's listed steps in investigating Mr. Roundtree's claims. For instance, Chase employees in the fraud unit concluded the signatures "on the sales draft for these transactions [were] similar to his signatures" from other transactions. (Dkt. No. 61-1 at 3.) Chase attempted to fax the Bagdad for information regarding the claim, but it did not respond. (<u>Id</u>. at 9.) Chase also contacted law enforcement in Spain and discovered Mr. Roundtree did not file a police report. (<u>Id</u>. at 7, 10.) Chase also noted Mr. Roundtree never filed a police report when he got back to the U.S. (<u>Id</u>. at 7.) Finally, Chase looked at the discrepancies in the phone calls from Mr. Roundtree: when Mr. Roundtree first called Chase on February 26, 2012, he said he was charged more than the amount authorized and mentioned nothing about being drugged. (<u>Id</u>. at 10.)

However, questions of fact as to the reasonableness of the investigation remain. First, a genuine issue of material fact exists as to whether Chase really did review "the types or amounts of purchases made in relation to the consumer's previous purchasing pattern." 12 C.F.R. § 226.12(b)(3), Supp. I, cmt. 3. Mr. Shrock states Chase would have analyzed Mr. Roundtree's spending patterns, but nothing from Chase's documentation of the investigation reveals that anyone looked into Mr. Roundtree's spending patterns. (Dkt. No. 60 at 3.) The only high-spending transaction Chase refers to from Mr. Roundtree's credit card statements is the $22,500 liposuction. (Dkt. No. 36 at 11.) The transaction at issue is about twice the amount of the liposuction.

Second, a genuine issue of material fact exists as to whether Chase requested all pertinent "documentation to assist in the verification of the claim." 12 C.F.R. § 226.12(b)(3), Supp. I,

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 11

cmt. 3. Although Chase contacted law enforcement in Spain, the investigative record does not indicate whether Chase contacted the security officer Mr. Roundtree allegedly spoke to at the conference he was attending. (Dkt. No. 61-1 at 3, 7.)

The Court DENIES summary judgment on the FCBA, finding genuine factual disputes as to the investigation exist for trial.

### E. Mr. Roundtree's Breach of Contract Claim Survives in Part

Mr. Roundtree moves for summary judgment on this claim, arguing Chase breached its Cardmember Agreement when it failed to conduct a reasonable investigation. Chase moves for summary judgment only for part of this claim, arguing it did not have a contractual duty to protect him from the charges, limit his spending, or notify him of suspicious charges. (Dkt. No. 35 at 3.)

Chase's Cardmember Agreements are governed by federal law and Delaware law. (Dkt. No. 31-1 at 14.) To state a claim for a breach of contract, the plaintiff must demonstrate the existence of a contract, the breach of an obligation in that contract, and the resultant damage to the plaintiff. Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 883 (Del. 2009). Contract interpretation is a question of law. Paul v. Deloitte & Touche, LLP, 974 A.2d 140, 145 (Del. 2009).

Mr. Roundtree argues, "Chase has breached its contractual duty to conduct a reasonable investigation and has failed to provide [him] with liability protection by holding him responsible for the unauthorized Bagdad charges." (Dkt. No. 62 at 24.) The Cardmember Agreement has a section discussing the card holders' rights and Chase's responsibilities under the FCBA. (Dkt. No. 31-1 at 14.) As stated above in the FCBA section, Chase has a duty under the FCBA to conduct a reasonable investigation into Mr. Roundtree's claim. Whether the investigation was

reasonable is a genuine issue of material fact, so whether Chase breached its contractual duty to abide by the FCBA is also a genuine issue of material fact.

Mr. Roundtree's other claimed breaches of the Agreement, however, fail. (Dkt. No. 1-2 at 6-7.) First, Mr. Roundtree alleges Chase breached its contractual duties when it failed to protect him from fraudulent charges. (Dkt. No. 1-2 at 6.) Nothing in the Cardmember Agreement states Chase has such duty. (Dkt. No. 31-1.) In fact, the Cardmember Agreement has a section discussing what to do if a mistake is on the statement; thus, the agreement suggests fraudulent charges may be posted to one's account. (Dkt. No. 31-1 at 14.)

Second, Mr. Roundtree contends Chase breached the contract when it failed to notify him of the unusual charges on his account. (Dkt. No. 1-2 at 6.) However, nothing in the Cardmember Agreement requires Chase to notify him of unusual charges. (Dkt. No. 31-1.)

Third, Mr. Roundtree argues Chase breached its contractual duties because it failed to notify him when he exceeded his credit limit (Dkt. No 1-2 at 6-7); however, the Cardmember Agreement states he had a credit access line, meaning each transaction was considered for approval on an individual basis and he was responsible for all balances, including those transactions above the credit access line. (Dkt. No. 31-1 at 11.) There is no evidence of breach on these grounds.

The Court DENIES summary judgment as to the breach of contract claim related to Chase's investigation, but GRANTS the motion as to the other claimed breaches of the Cardmember Agreement.

F. **Plaintiff is Not Entitled to Additional Discovery**

"If a nonmovant shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition, the court may (2) defer considering the motion or deny it." Fed. R. Civ. P. 56(d). Mr. Roundtree argues he needs additional evidence, but Chase states Mr. Roundtree

fails to show how the information he needs from the disputes department relates to his ability to oppose Chase's Motion for Summary Judgment. (Dkt. No. 74 at 12.) This Court has already denied Mr. Roundtree's motion to compel much of this same evidence. Finding Mr. Roundtree had ample time to conduct discovery and no basis to allow further fact discovery, the Court DENIES the request.

### Conclusion

Mr. Roundtree's Motion for Summary Judgment is DENIED, and Chase's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. The negligence, fraud, negligent misrepresentation, and fiduciary duty claims are DISMISSED. The WCPA claim fails because Mr. Roundtree has not established a prima facie case. The FCBA and breach of contract claims have genuine issues of material fact that cannot be resolved on summary judgment; the Court DENIES the motions as to these two claims.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 26, 2014.

*(signature)*
Marsha J. Pechman
United States District Judge

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 14